(C. D. 1301)

GEO. WM. RUEFF, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 14, 1951)

*Lane, Young & Fox* (*William H. Fox* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*William J. Vitale* and *Harold L. Grossman,* special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: The merchandise at issue in this case is 2,403 coils of henequen rope entered at the port of New Orleans. Duty was assessed thereon at the rate of 1 cent per pound, plus $7\frac{1}{2}$ per centum ad valorem under paragraph 1005 (a) (1) of the Tariff Act of 1930, as amended by the Mexican Trade Agreement, T. D. 50797, pursuant to the provisions of section 508, respecting commingled goods, as cordage, being wholly or in chief value of henequen, and smaller than three-fourths of an inch in diameter. The plaintiff claims that the merchandise was not commingled within the meaning of section

508, and that 708 coils thereof are properly dutiable at only 1 cent per pound under said paragraph, as amended, *supra*, as cordage wholly or in chief value of henequen, and three-fourths of 1 inch or larger in diameter. The remaining 1,695 coils, conceded by counsel for the plaintiff to be less than three-fourths of an inch in diameter, are not in issue.

The statutes involved in this action provide as follows:

PAR. 1005 (a)  Cordage, including cables, tarred or untarred, composed of three or more strands, each strand composed of two or more yarns:

(1) Wholly or in chief value of manila (abaca), sisal, henequen, or other hard fiber, 2 cents per pound; and in addition thereto, on any of the foregoing smaller than three-fourths of one inch in diameter, 15 per centum ad valorem;  *  *  *.

Paragraph 1005 (a) (1) was amended by the Mexican Trade Agreement, *supra*, to provide as follows:

PAR. 1005 (a) (1)  Wholly or in chief value of  *  *  *
henequen_____ 1¢ per lb.
Any of the foregoing smaller than three-fourths of one
inch in diameter shall be subject to an additional
duty of_____ 7½% ad valorem

SEC. 508.  COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

The question at issue is whether merchandise subject to different rates of duty was so packed together or commingled at the time of importation that the quantity of each class could not be readily ascertained by the customs officers.

At the trial, Avery Stirratt, the owner of Stirratt Cordage Co. of New Orleans, the importer, testified that he purchased the cordage in question and saw it at the time of importation; that it was packed in the same manner as cordage is always packed, that is:

 *  *  *  each coil was individually wrapped in a cloth container and each of the coils was marked with the lot number and with the size and with the weight of the particular coil.  (Record p. 8.)

The witness testified that the details appearing on the wrappings corresponded with the invoice description; that there was a weight, or packing list, individually itemizing the coil number, the mark on each coil, and the gross and net weights thereof.

These packing lists formed a part of the protest papers and were admitted in evidence, over objection of counsel for the Government, as collective exhibit 1.

The witness further testified that the weight lists were turned over to the collector by the customhouse broker with the shipping documents; that the merchandise was paid for on the basis of the weights shown on the weight and packing lists; and the cordage was sold apparently without being unwrapped to a customer in the United States, but shipments were made to several destinations; and that it is the custom of the trade to accept the seller's weights which are stenciled on the coils.

The witness further testified that in each individually wrapped coil there was only one size of rope; and that as rope is bought and sold by the pound, it does not matter what the length is of any individual piece.

Thomas H. Elliott, 3d, United States customs inspector, was the only witness on behalf of the Government. He testified that he weighed the rope; that there were 37,000 packages discharged from the vessel; that there was nothing orderly or uniform about the piles of merchandise discharged from the vessel; that "Frankly, we remarked at the time it was just as though they turned the ship upside down and shook it." The witness further testified that the bales of rope are usually separated according to sizes and markings so that an inspector can step in and weigh them with very little difficulty; that the bales were not available in this shipment in any part but were all mixed together; that it is necessary to locate bales by the marks and numbers and weigh according to the permit, but he could not locate the bales by marks and numbers readily and, therefore, had to weigh according to general markings. Although there were five sizes of bales, the witness admitted he did not weigh according to sizes; that he could not tell whether one rope was larger than another except by the markings, and the packages, although not of the same size, were weighed together for the reason that there was not sufficient time to do the job the way it should be done, and it would be considered unreasonable in view of the labor required to weigh all the one size; and that if they were separated according to marks and numbers, he could have weighed them properly, but because of the limited room, the stevedores were unable to do a thorough job of separation. The witness further stated that in many cases the marks were very hard to read and, in some cases, as to the number and size, there were no markings at all.

Counsel for the plaintiff contends that the commingling section does not apply in cases where the imported merchandise is individually wrapped and packaged and not commingled in the same package with other merchandise dutiable at a different rate; that the customs inspector simply failed to carry out his duties in separating the coils according to the various sizes, as indicated by mark, lot, and size of diameter stenciled on the outside wrapping of each coil, and also in his failure to inspect the merchandise. It is further contended that duty

should have been assessed on the 708 coils of rope, three-fourths of an inch or larger in diameter, at 1 cent per pound under said paragraph 1005 (a) (1), *supra*, and that allowance should be made in calculating the duties for three coils of rope numbered 271, 307, and 256, short out of mark E–1, and two coils of rope numbered 247 and 299, short out of mark G–1, which were officially reported short by the customs officials and allowed by the collector when he liquidated the entry.

The Government contends that the imported merchandise, subject to different rates of duty, was so mingled that the quantity of each class or kind could not be readily ascertained by the customs officers within the meaning of section 508, *supra*, as it would require a large number of additional personnel, a much greater length of time, and more wharf space to permit a proper segregation and examination of the contents of each package.

The evidence before the court is conclusive that various sizes of rope were not packed together in one bundle. The Government evidently recognizes that fact when it stresses the claim that the merchandise was so mingled "that the quantity of each class could not be readily ascertained." The mingling together, however, was the mingling of these 2,398 coils (five coils having been short-landed) with the remainder of the cargo of the vessel, in all 37,000 packages, as well as the mingling of the coils of different sizes upon the wharf. That kind of mingling clearly is not what is contemplated in section 508. These bales of rope were easily distinguishable by size. Besides, they were marked with the weight, coil number, and the diameter of the rope. It would have been an easy procedure to weigh the bales according to the diameter of the rope had the customs inspectors taken the time to segregate the bales according to size from the remainder of the 37,000 packages upon the overcrowded wharf. However, the bales apparently were all weighed without regard to the different classification. There were five lots and the total weights were returned for each lot regardless of size of the rope.

The case of *B. Mirsky & Son* v. *United States*, 24 Cust. Ct. 378, Abstract 54059, involved the importation of certain cigars. The plaintiff claimed that proper allowance was not made for the weight of the coverings or wrappings of the cigars. The cigars there in question consisted of various sizes packed in the same box. The weigher reported the entire tare of 25 cigars, although they were in three different sizes. Finding the weight of 25 cigars with the tare, the weight of 1,000 cigars in proportion was obtained. The difference in the weights of each kind was disregarded. The weigher stated that he was "so dizzy with figures I just lumped it on this." Objection was made by the Government to any evidence as to the weight of the cigars at the time of shipment, and it moved to strike such testi-

mony from the interrogatories admitted in evidence in that case. The court denied the motion for the reason that the return of Government weights was obviously in error, and adopted the invoice weights of the immediate wrappers and containers of the cigars as the proper weights thereof.

Judging from the evidence adduced, it is abundantly clear that the bales of rope in question were not so weighed by the Government weigher that the proper total weights of the henequen rope in diameter of three-fourths of an inch or larger could be ascertained by the collector in assessing duty. It is also clear that there was not such a mingling of the rope in question that the quantity of each class thereof could not have been readily ascertained. Moreover, section 508, *supra*, never contemplated that the highest rate of duty should become applicable to a shipment of goods, such as is here in question, because of the bales of different sizes becoming commingled on the wharf after discharge from the vessel, with each other, or with other goods arriving upon the same vessel, so that the bales of various sizes could not readily be located.

Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entry and assess duty upon the basis of the weights shown on the invoice, that is to say, on the 1,695 coils of rope smaller than three-fourths of 1 inch in diameter at 1 cent per pound and 7½ per centum ad valorem under paragraph 1005 (a) (1), Tariff Act of 1930, as modified by the trade agreement with Mexico (T. D. 50797), and on the 708 coils of rope three-fourths of 1 inch or larger in diameter, at 1 cent per pound under said paragraph, as modified, taking into consideration, of course, the allowance already made for shortage of five coils.